IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID JOHNSON, | : | CIVIL ACTION NO. **3:CV-03-2277** |
| | : | |
| Plaintiff | : | (Judge Caputo) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| | : | |
| BENJAMIN TOWNSEND, et al., | : | |
| | : | |
| Defendants | : | |

**REPORT AND RECOMMENDATION**

**I. Background.**

Plaintiff, presently incarcerated at the State Correctional Institution at Rockview ("SCI-Rockview"), filed this 42 U.S.C. § 1983 civil rights action on December 15, 2003. (Doc. 1). The Plaintiff filed an Application to Proceed *in forma pauperis*. (Doc. 2).

Pursuant to the Prison Litigation Reform Act of 1995,[1] (the "Act"), we conducted a preliminary screening of Plaintiff's complaint and issued a Report and Recommendation. (Doc. 10); *See* 28 U.S.C. § 1915.[2]  The Report recommended dismissal of all of Plaintiff's complaints pursuant to 28 U.S.C. § 1915A(b)(1) and (2).  Plaintiff then filed Objections to our Report and a Motion for Leave to Amend his Complaint. (Doc. 13).  On March 1, 2004, the District Court granted the Motion to Amend and declared the Report and Recommendation moot. (Doc. 18).

---

1. Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

2. The Prison Litigation Reform Act of 1995 obligates the Court to engage in a screening process when a prisoner files a complaint.

On March 2, 2004, Plaintiff filed his Amended Complaint.  (Doc. 20).  On March, 3 2004, Plaintiff filed a Motion for Leave to Amend/Correct Complaint.[3]  (Doc. 21).  On March 23, 2004, Plaintiff filed for a Motion for Leave to Supplement Complaint.  (Doc. 31).    Subsequently, on March 24, 2004, we conducted a preliminary screening of Plaintiff's Amended Complaint and issued a Report and Recommendation.  (Doc. 32).  The Report recommended that portions of the complaint, as well as four Defendants, should be dismissed.  Specifically, we recommended: "that the Amended Complaint be dismissed in it entirety as to Defendants Tennis, Burks, Rackovan and Leathers pursuant to 28 U.S.C. § 1915A(b)(1); that Plaintiff's claim for monetary damages as against all of the Defendants in their official capacities be dismissed in accordance with 28 U.S.C. § 1915A(b)(2); and Plaintiff's Amended Complaint with respect to his Eighth Amendment claims against Defendants Townsend, Sowash and Winkleman and First Amendment retaliation claims against Defendant Townsend be remanded to  [Magistrate Judge Blewitt] for further proceedings." (Doc. 32, p. 18).  Plaintiff filed Objections to the Report and Recommendation (Doc. 33), and the District Court issued an Order on December 22, 2004.  (Doc. 48).  The District Court ordered that Plaintiff's objection to the Magistrate Judge's Report be granted; that the Report and Recommendation be modified; that Plaintiff's claims against Defendants in their official capacity be dismissed; and that the Second Amended Complaint be served on the Defendants by the United States Marshal.  (Doc. 46).

---

3. Plaintiff's Motion to Correct Complaint was to change Defendant No.8 from J. Leathers to D. Leathers.  (Doc. 21).

In an action brought pursuant to 42 U.S.C. § 1983, the Plaintiff must prove the following two essential elements in order to state a claim: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States. *Parratt v. Taylor*, 451 U.S. 527 (1981).

## II. Allegations of the Complaint.

The Plaintiff names several prison officials at SCI-Rockview as Defendants. Specifically, the Plaintiff names the following Defendants: Benjamin Townsend, Food Service Supervisor; Frank Tennis, Superintendent; Albert Winkleman, Assistant Food Service Manager; Gary Sowash, Food Service Manager; Anthony Russ, Major Officer of Professional Responsibility; Sharon Burks, Chief Grievance Officer; Jeffery Rackovan, Grievance Coordinator and Assistant Superintendent; and D. Leathers, Captain of Security. All of the Defendants are named in their individual and official capacities. (Doc. 46, p.4, ¶ 11). In his Second Amended Complaint, Plaintiff names the following individuals as additional Defendants: Rick Hoover, Counselor; and Shannon Dulaney, Psychologist. Both additional Defendants are named in their individual and official capacities. (Doc. 31, p.2, ¶ 7).

The Plaintiff asserts that in October, 2001, he was assigned to work in the prison kitchen as office clerk by Defendants Townsend and Sowash, and that these Defendants made him work seven (7) days a week, nine and one-half (9 ½) hours per day, under threat of misconduct, without the required two (2) days off, in violation of Department of Corrections ("DOC") policy. The Plaintiff also alleges that the two stated Defendants made him work more than fifty-six (56) hours

per week, while he was only paid for forty (40) hours of work per week.  Plaintiff states that he was made to work excessive hours by Defendant Townsend for about twenty (20) months and by Defendant Sowash for nine and one-half (9 ½) months, and that his requests for days off or for a new job assignment were denied by Defendants Townsend, Winkleman and Sowash.  Plaintiff avers that Defendant Townsend responded to his requests for a new job by advising him to do his job, and if not, he would get a misconduct.  Plaintiff states that Defendants Sowash and Winkleman enforced Defendant Townsend's excessive hours practices and that they responded to his requests by referring him back to Townsend.  Plaintiff also states that Defendants Winkleman and Sowash were aware of Townsend's practices and had the authority to correct him, but they failed to act. (Doc. 46, pp. 5-7).

Plaintiff claims that on May 27, 2003, he was removed from his job in the culinary department after he contacted Defendant Tennis, the Deputy Superintendent at this time, and the employment office about his situation and requested assistance.  The Plaintiff then states that he filed a grievance on May 28, 2003, against Townsend.  Plaintiff also filed a second grievance on June 28, 2003, against Townsend, alleging Townsend was retaliating against him for filing the first grievance. (*Id*. at pp. 7-8).  The Plaintiff avers that other inmates harassed and threatened him after new work restrictions were imposed and that he believes that Defendant Townsend told the other inmates that he [Plaintiff] was to blame for the new restrictions.

The Plaintiff states that he contacted Defendant Rackovan to resolve the work schedule problem and his retaliation claim against Defendant Townsend and that after they met, the Plaintiff was not pleased with the Defendant Rackovan's response to sit tight and perform well at his new

4

job.  (*Id*. at p. 9).

The Plaintiff avers that Defendant Tennis responded to his two grievances and that he disagreed with this Defendant's responses to them. The Plaintiff states that he appealed his grievances to Defendant Burks.  (*Id*. at pp. 10-11).  Plaintiff states that Defendant Burks affirmed the decisions with respect to his grievances.  (*Id*. at pp. 12-13).

The Plaintiff claims that on September 3 and 4, 2003, while he was working in the culinary department as a tin shop worker, Defendant Townsend followed him around and stared intensely at him.  Plaintiff alleges that he reported the staring incidents to the Security Office and that he was told by Defendant Leathers that an investigation would be conducted.  The Plaintiff states that he was not informed of the results of Leathers' investigation.  (*Id*. at pp. 11-12).

The Plaintiff states that he has gone to eat less than ten (10) times since May, 2003, due to fear of harm by Defendant Townsend or other inmates if he returns to the culinary building.  He states that he suffered weight loss, sleep loss, blurred vision, and migraine headaches.  (*Id*. at p. 12).

Plaintiff states that on January 14, 2004, Defendant Townsend saw him and said "it's a time to kill."  (*Id*. at p. 13).  Plaintiff states that he reported this incident, and Defendant Leathers interviewed him and said he [Leathers] would investigate the incident.  (*Id*.).

The Plaintiff implicates the First Amendment with respect to his retaliation claim against Defendant Townsend.  Insofar as the Plaintiff avers that he was forced to work excessive hours,  we construe that the Plaintiff is claiming the conduct of Defendants Townsend, Sowash and Winkleman amounted to cruel and unusual punishment.  (*Id*.).  These claims are cognizable under §1983.

As relief against the original Defendants, Plaintiff seeks compensatory and punitive damages as well as injunctive relief. (*Id.* at pp. 18-19). As stated, the Plaintiff sues all of the Defendants in their individual and official capacities.[4]

Plaintiff asserts that on January 29, 2004, he contacted additional Defendant Dulaney about an interview in hopes of attending a sex offender Relapse Prevention Group.[5] (Doc. 31, p. 3). Plaintiff states that on February 3, 2004, Mr. Webb, Plaintiff's counselor, was to provide a SCI-Rockview recommendation for parole based on Plaintiff's completion of his correctional plan. (*Id.*).

On February 24, 2004, Plaintiff claims staff personnel "Doe" approached him and informed him of other staff spreading the "word" about Plaintiff and "Doe" should watch his back because Plaintiff was a troublemaker who liked to file paperwork on staff. (Doc. 31, p. 4). Plaintiff believes that this conversation occurred because of his past grievances, complaints, and this civil action. (*Id.*).

On February 26, 2004, Defendant Dulaney met with Plaintiff. Defendant Hoover was also present. (*Id.*). Defendant Hoover stated that Plaintiff had not completed the required sex offender program. However, Defendant Dulaney corrected this error by stating that Plaintiff did have a completion in his file. Defendant Dulaney then allegedly told Plaintiff "if you think that I'm going to put you in a relapse group so you can just make parole you're wrong." (*Id.*). Defendant Hoover

4. As mentioned, The District Court has previously dismissed the Plaintiff's claims against all of the Department of Corrections employees in their official capacities. (Doc. 48).

5. A Relapse Prevention Group is for inmates who have successfully completed the Orientation and Core groups. It is not a mandatory group. Plaintiff had previously completed the Orientation and Core groups at a different correctional facility, SCI-Smithfield. (Doc. 31, p. 3).

suggested that Plaintiff redo the Core group. (*Id.* at 5). Plaintiff objected, and Defendant Dulaney told Plaintiff not to get smart with or challenge her. (*Id.*). Plaintiff then stated that he was only asserting himself and voicing his opinion. Defendant Hoover replied "so we've heard." (*Id.*). Plaintiff believes that statement refers to earlier indications of staff rumors that labeled him as a troublemaker. Plaintiff asked what Defendant Hoover had heard about Plaintiff, and Defendant Hoover replied that Plaintiff's correction plan completion status was revoked and Plaintiff would need to go back into the Core group. (*Id* at 5-6). Plaintiff asserts that from September 28, 2001, through February 26, 2004, his correction plan maintained a status of completion. (*Id.* at 6).

Plaintiff believes that the actions of Defendants Dulaney and Hoover were retaliation for Plaintiff's grievances and to punish Plaintiff with a negative review prior to his appearance before the Parole Board in June 2004. (*Id.* at 7). Plaintiff also asserts that the actions of the additional Defendants provide support for his original claims. (*Id.*).

Plaintiff claims that the actions of Defendants Dulaney and Hoover have caused him great emotional and mental stress as well as sleep loss and chronic headaches, and he claims he will be continually targeted by staff in retaliation. (*Id.* at 8).

Plaintiff's legal claims rest on his assertion that Defendants Dulaney's and Hoover's revocation of his completion status was done in retaliation for filing past grievances, complaints, and the current civil action against employees at SCI-Rockview. Plaintiff further asserts that the actions of Defendants were done with malicious and sadistic intentions to punish Plaintiff and that they violated the First and Eighth Amendments of the Constitution, as well as caused intentional infliction of mental and emotional distress, proscribed under State Law. (*Id.*).

Plaintiff prays for the following relief: (1) declaratory judgement; (2) preliminary and permanent injunction pertaining to the actions of Defendants with respect to Plaintiff's completion status and parole review; (3) prohibit Defendants from harassing, threatening or punishing Plaintiff; and (4) compensatory and punitive damages. (*Id*. at 9).

## III. Motion to Dismiss

### 1. Standard of Review.

When evaluating a motion to dismiss, the court must accept all material allegations of the complaint as true and construe all inferences in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A complaint should not be dismissed for failure to state a claim unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 44-46 (1957); *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir. 1988). A complaint that sets out facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend. *Estelle v. Gamble*, 429 U.S. 97, 107-108 (1976).

Defendants' brief in support of their Motion to Dismiss Plaintiff's Second Amended Complaint sets forth the following arguments: (1) dismissal is warranted because Plaintiff is not entitled to inmate compensation; (2) Defendants Tennis, Rackovan and Burks should be dismissed because they merely process inmate grievances; (3) Plaintiff's allegations of staring and harrassment should be dismissed because they do not amount to cruel and unusual punishment; and (4) Plaintiff's State Law claims should be dismissed because of sovereign immunity. (Doc. 64).

8

## 2. *Plaintiff's Entitlement to Inmate Compensation and Days Off*

Plaintiff states that deprivation of compensation is a violation of his liberty and property interests under the due process clause of the Fourteenth Amendment. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead have a legitimate claim of entitlement to it." *Quinlan v. James* 866 F.2d 627, 630 (3d Cir. 1989)(quoting *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)). Property interests are not created by the Constitution. "Rather, they are created and their dimensions are defined by existing rules or understanding that stem from an independent source such as state law rules or understanding that secure certain benefits and that support claims of entitlement to those benefits." *Id*. Plaintiff argues that the Department of Corrections (D.O.C.) Policy mandates compensation for inmates. However, we find the D.O.C. policy does not provide a property interest to Plaintiff because the policy is for internal Department use and does not confer any constitutional right to an inmate.[6]

A policy manual does not have the force of law and does not rise to the level of a regulation. *Mercy Catholic Med. Ctr. v. Thompson,* 380 F.3d 142, 154 (3d Cir. 2004). Recently, the Third Circuit clearly stated "that the agency interpretive guidelines do not give rise to the level of a regulation and do not have the effect of law." *Id*. Further, a violation of an internal policy does not automatically rise to the level of a Constitutional violation. *Whitcraft v. Township of Cherry Hill,* 974 F.Supp. 392, 398 (D.N.J. 1996)(citing *Daniels v. Williams,* 474 U.S. 327, 332-33, 106 S.Ct. 662, 665-66, 88

---

6. Plaintiff does not provide an actual citation, he merely states that "D.O.C.policy states," therefore, we are assuming that Plaintiff is referencing the D.O.C.'s Inmate Compensation Policy DC-ADM 816.

L.Ed.2d 662 (1986); *Edwards v. Baer,* 863 F.2d 606, 608 (8th Cir.1988); *Jones v. Chieffo,* 833 F.Supp. 498, 505-506 (E.D.P.a.1993)).  Presently, DC-ADM 816 Inmate Compensation Policy  provides that it is to establish a "uniform employment guideline" to the Department, rather than give rights to an inmate.  DC-ADM 816(II).  We find the purpose statement persuasive in determining that the Inmate Compensation Policy is for internal use only and therefore, a violation of this policy is not a *per se* Constitutional violation.

In addition, we find the specific language of the D.O.C. policy does not afford an inmate Constitutional rights.  The overall language of the policy addresses Department officials with respect to the inmates, not the inmates themselves.  *See* DC-ADM 816.  Plaintiff's contention that the D.O.C. policy creates a property interest is unfounded because the policy does not address the inmate's rights, only Department guidelines concerning inmate employment.  For example, the "Policy" section provides:

> It is the policy of Department to compensate an inmate for participating in work and/or education programs.  An inmate is not an employee of the Department. Compensation and opportunities to advance provide positive reinforcement for developing good work habits that are important for the inmates reintegration into the community upon release.

DC-ADM 816(V).

While we recognize that the Policy is an important part of inmate rehabilitation, we do not find that the policy confers a constitutional right upon an inmate.  The policy clearly states that an inmate is not an employee of the Department and therefore, does not receive the same entitlement to compensation that a state employee receives.  Moreover, compensation is used as a teaching tool rather than payment for a service rendered.  Just like any other rewards program, compensation can

be withheld for poor performance. *See* DC-ADC 816(VI)(A)(2). Therefore, we find that the structure of the D.O.C. policy does not create an entitlement.[7] Due to the stated purpose and the general nature of the language used in the Inmate Compensation policy, we find that the DC-ADM policy is an internal policy manual created to guide the Department in inmate employment matters.

Finally, it is well settled that inmates have no constitutional right to compensation. *Murray v. Miss. Dep't of Corr.,* 911 F.2d 1167, 1167-68 (5th Cir. 1990) ("Compelling an inmate to work without pay is not unconstitutional...compensating prisoners for work is not a constitutional requirement but, rather, is by the grace of the state"); *Vanskike v. Peters,* 974 F.2d 806, 809 (7th Cir. 1992)("there is no constitutional right for compensation for...work"). The Middle District of Pennsylvania has also joined these circuits in concluding that prisoners have no "Constitutional right to be paid for their labor." *Bryant v. Miller,* 637 F.Supp. 266, 229 (M.D. P.A. 1984)(Citing *Sigler v. Lowerie,* 404 F.2d 659 (1968))[8]. Based on the above, we find that Plaintiff does not have a Constitutional property right to compensation under the due process clause of the Fourteenth Amendment.

---

7. We are not aware of any regulation or statute that mandates that state inmates should be compensated for their work. However, the court has taken under consideration 61 P.S. § 256 which provides that the board of inspectors "may" establish a pay scale, and "may" pay and the inmates "may" receive compensation for their work. The use of the word "may" does not compel compensation for inmates. We also note that this section relates to convict-made goods and therefore would not include work in a prison kitchen. Also taken into consideration is Department of Corrections regulation 37 Pa. C.S. § 95.235(a)(3), which provides that at minimum "all prisoners that work shall be paid." However, this regulation only applies to county facilities not state institutions like SCI-Rockview. 61 P.S. § 197.

8. We note that the *Bryant* Court addresses federal prisoners, however we find that the same constitutional reasoning applies to state prisoners as well.

11

Plaintiff has not established a property interest. Therefore, we must now examine whether Plaintiff has a liberty interest in compensation. To establish a state-created liberty interest in the prison context, we must examine Plaintiff's claims under the standard established by the Supreme Court in *Sandin v. Conner,* 515 U.S. 472 (1995). *Shoats v. Horn,* 213 F.3d 140, 143 (3d Cir. 2000). In *Sandin*, the Court "concluded that state-created liberty interests could arise only when a prison's action imposed an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.*(quoting *Sandin,* 515 U.S. at 483). Specifically, the Supreme Court held that the liberty interest asserted focused on "freedom from restraint which, while exceeding the sentence is such an unexpected manner as to give rise to protection by the Due Process clause of its own force." *Sandin,* 515 U.S. at 483. *Sandin* addressed the narrow scope of punitive confinement, but multiple courts have expanded the reasoning of the decision to include many non-confinement asserted liberty interests. *See Gotcher v. Wood,* 66 F.3d 1097, 1100-01 (9th Cir. 1995 (state-created liberty interest in receiving credit for good conduct survives *Sandin)*; *See Frazier v. Coughlin,* 81 F.3d 313 (2nd Cir. 1996)(per curiam)(under *Sandin* prisoner has no liberty interest in an in-prison assignment in the prison laundry). We find that *Sandin* is the appropriate tool to determine whether Plaintiff has a liberty interest in compensation for a prison job.

Plaintiff's argument that compensation for prison work is a liberty interest must fail because Plaintiff has no constitutional right to compensation, and there is a not a state-created interest. As stated above, Plaintiff does not have a Constitutional right to payment. We further find that failure to compensate for overtime worked does not impose an atypical or significant hardship on

12

Plaintiff.  Most significantly, inmates that do not work or attend educational programs do not receive any compensation, and therefore, it is likely that many inmates have no pay at all. Therefore, the lack of compensation is not outside the realm of what other prisoners encounter. Further, Plaintiff has not alleged any specific facts to support a finding that he endured any type of significant hardship, only that he is subject to different conditions than large numbers of inmates. This alone will not suffice to support that a hardship has occurred, as Plaintiff has not alleged a direct impact to himself.  We find that Plaintiff does not have a property or liberty interest within the Due Process clause and that the D.O.C. policy does not afford Plaintiff a Constitutional right to receive compensation for overtime worked at his prison job.

Plaintiff also alleges that his property and liberty interests were violated because Defendant Townsend required him to work on his days off and to work for nine and a half hours a day.  As stated above, Plaintiff must have a legitimate claim or entitlement to days off to secure a protected property interest under the Due Process Clause.  "There is no federally protected right of a state prisoner not to work while imprisoned after a conviction." *Draper v. Rhay,* 315 F.2d 193, 197 (9th Cir. 1963); *See also Fidtler v. Rundle,* 316 F.Supp. 535 (E.D. Pa. 1970)(compulsory employment of prisoners is not unconstitutional).

Moreover, in addressing the workweek, the DC-ADM 816 manual provides:

B.  Length of Workday and Workweek

(1) The *standard* workday consists of six hours, and the *standard* workweek consists of five days.  The total number of school and work hours combined may not exceed eight hours multiplied by the *number of workdays available*.

13

>   (2) An inmate is compensated for the actual total hours worked. Hours worked are computed from the time of arrival and departure from the classroom or the work site. An inmate reporting late to the work site will be permitted to work only at the discretion of the supervisor
>
>   (3) No overtime may be paid to an inmate working inside the facility, except under emergency situations and with the approval of the Facility Manager/designee.
>
>   (4) An outside detail may be assigned overtime work with the approval of the Facility manager/designee.

DC-ADM 816 (1)-(4)(emphasis added).

As stated above, we do not find that this policy carries the force of law. However, we note that Section 2 only refers to the standard workweek, and the maximum hours that an inmate is allowed to work is dependant upon the available workdays. It is easily conceivable that a prison kitchen, which supports other inmates and staff, is open seven days a week and that an inmate assigned to the kitchen would be required to support kitchen needs. Therefore, we find that Plaintiff does not have a property interest in his days off or hours worked because it is within the realm of incarceration that inmates are required to work, and D.O.C. policy does not sustain Plaintiff's contention.

As to Plaintiff's liberty interest, we must determine if a requirement to work on days off creates an atypical and significant hardship on an inmate as compared to the ordinary incidents of prison life. *Sandin,* 515 U.S. at 483. Similar to our property interest analysis, we do not find that Plaintiff has a liberty interest in days off or hours worked. As stated above, Section 2 does not preclude an inmate from working more than five days a week. Therefore, other inmates are subject to the same work schedule under which Plaintiff worked. Furthermore, Plaintiff does not allege any facts that demonstrate a significant hardship, only that his treatment differed from "a

14

large number of inmates." (Doc. 68, p. 1). For the reasons stated, we find that Plaintiff does not possess a liberty interest in his days off or hours worked.

### 3. Cruel and Unusual Punishment in Plaintiff's work assignment.

The Eighth Amendment does not apply to inmates in a work environment unless they are required to perform physical labor which is beyond their strength, endangers their lives or health or causes undue pain. *Berry v. Bunnell,* 39 F.3d 1056, 1057 (9th Cir. 1994)(holding that requiring an inmate to work one extra eight hour shift did not constitute cruel and ususal punishment); *Wood v. Partilla,* 581 F.Supp. 1066, 1077 (N.D. Ill. 1984)(holding that an inmate who worked 16-18 hours a day did not state a claim under the Eighth Amendment because he did not make specific claims of extreme hardship).

In the present case, Plaintiff has not alleged extreme hardship with respect to the hours worked. Plaintiff has not claimed that he was made to labor more than he was capable or that he was caused undue pain. He does not claim that his working was used for punitive purposes. Therefore, we find that Plaintiff's Eighth Amendment claim that he was made to work excessive hours should be dismissed without prejudice.

Plaintiff also claims an Eighth Amendment violation with respect to Defendant Townsend's threat of issuing a misconduct if Plaintiff did not show up for work, even on his off days. Harassment is insufficient to state a constitutional claim deprivation. *Murray v. Woodburn,* 809 F. Supp. 383, 384 (E.D.Pa 1993). In *Booth v. King* 346 F.Supp.2d 751, 759 (E.D.Pa. 2004), the prisoner plaintiff filed a complaint alleging cruel and unusual punishment when prison officials

verbally abused him and threatened him with false reports, mail tampering or violence.  *Id.*  The District Court held that verbal abuse and threats will not, without some reinforcing act accompanying them, state a constitutional claim.  *Id.*  The threats allegedly made to our Plaintiff are similar to the threats made to the plaintiff in *Booth, i.e.,* threats of reports or misconduct. While the alleged actions of Defendant Townsend in threatening Plaintiff with a misconduct maybe inappropriate, we do not find that they violated the Constitution.

Since a Constitutional violation has not been established, we must now consider the State laws and regulations concerning inmate work policy.  As discussed above, the D.O.C. policy concerning Plaintiff's work requirements does not have the force of law, and there are not other statutes or regulations governing the number of hours Plaintiff works.  Because Plaintiff does not have a Constitutional right to be paid or to days off while working in a State prison, we find that he has not stated a claim for which relief can be granted as against Defendants Townsend, Sowash and Winkleman.  Therefore, we recommend these claims against the stated three defendants be dismissed.[9]

### 4.  Defendant's Tennis, Rackovan and Burks

Plaintiff alleges that Defendant Rackovan's response to Plaintiff's oral request for help to end Defendant Townsend's retaliation was deliberately indifferent to the substantial risk of harm that Plaintiff had already encountered and continued to face.  (Doc. 46, p. 16).  Plaintiff also alleges that Defendant Tennis' failure to act upon Plaintiff's grievances was deliberately indifferent

---

9. Claims 69-70.  (Doc. 46, p.14).

to the report that Plaintiff was being retaliated against and was a substantial risk for assault that constituted cruel and unusual punishment.  (*Id.*).  Plaintiff alleges that Defendant Burks' failure to act upon Plaintiff's grievance and claims of retaliation, and that the Defendant's statement that the decision at an institutional level were appropriate, aggravated the substantial risk of harm the Plaintiff faced.  (*Id.* at p. 17).  The District Court held, in its December 22, 2004 Order, that Plaintiff's claims against Defendants' Rackovan, Tennis, and Burks are based on their alleged indifference to the Constitutional violations Plaintiff complained about in his grievances.  (Doc. 48, p. 4-6).  Plaintiff filed grievance #55535 alleging that Defendant Townsend was retaliating against him for filing an earlier grievance concerning the working conditions in the culinary department.  Defendants have not moved to dismiss the Constitutional violations alleged with respect to certain acts committed by Defendant Townsend, specifically, Defendant Townsend's alleged actions of maliciously and sadistically spreading rumors about Plaintiff to incite other inmates to cause Plaintiff harm, which caused Plaintiff to fear going to eat.  Since these Constitutional claims still remain, Defendants Tennis, Rackovan and Burks are still liable with respect to these claims.

Plaintiff also alleges that Defendants Tennis, Rackovan and Burks were deliberately indifferent with respect to responding to his Constitutional claim that he did not receive due process because he was not paid for his work and he was required to work on his off days.   Since we recommend that these excessive work hours and failure to pay for work claims be dismissed, we also recommend that the due process claims against the above named Defendants be dismissed.

### 5.  *Staring and Harassment as Cruel and Unusual Punishment*

As discussed above, harassment does not constitute cruel and unusual punishment and is insufficient for a Constitutional claim.  *Murray,* 809 F. Supp. at 384.  Further, it is established that verbal harassment without more will not suffice to state a constitutional claim.  *Maclean v. Secor,* 876 F. Supp. 695, 698-99 (E.D. Pa. 1995).  1)We agree with Defendants that staring and stating on one occasion "it's a time to kill" does not rise to the level of a Constitutional violation.  Therefore, these claims against Defendant Townsend should be dismissed.

In their Motion to Dismiss, Defendants did not address Plaintiff's claim that Defendant Townsend sought retaliation against Plaintiff by proliferating rumors about Plaintiff due to Plaintiff's filing a grievance against Defendant Townsend.  As such, this retaliation claim remains, and we will not recommend its dismissal.   Furthermore, an Eighth Amendment claims is stated when a prisoner alleges that a prison official intended to cause him serious harm by inciting other inmates to do violence against him.  *See Purkey v. Green,* 28 Fed.Appx. 736, 745 (10th Cir. 2001).  "While an idle threat of impending physical harm that is not carried out will not suffice to state an Eighth Amendment claim, an imminent threat of serious harm, even though injury never actually occurs, will suffice."  *Id.*  Currently, Plaintiff alleges that other inmates began harassing him about working conditions because of rumors that Defendant Townsend spread.  We find this sufficient to state an Eighth Amendment claim.  (Doc. 46, p. 8, ¶ 37-40).

18

6. *Sovereign Immunity*.

Plaintiff alleges multiple negligence and intentional tort claims under state law against Defendants.  (Doc. 46, pp. 15-18).  Defendants claim that they are immune from these claims in this action pursuant 42 Pa.C.S. § 8522.  (Doc. 65, p. 9-10).  To determine if the state employees at SCI-Rockview are immune, the Court considers "whether the employee was acting within the scope of employment; whether the alleged act was negligent and damages would be recoverable but for the availability of the immunity defense; and whether the act fits within one of the exceptions to sovereign immunity."[10]  *Irizarry v. Com. of Pa., Dept. of Transp.*, 1999 WL 239917, 4 (E.D. Pa. 1999).

Currently, we find that Defendants Sowash, Winkleman, Tennis, and Leathers were acting within their official capacity in handling Plaintiff's work conditions and grievance.  Thus, those Defendants are immune from Plaintiff's State law claims against them.  However, we do not find that Defendant Townsend's actions of spreading rumors and staring fall within his official duty as a

---

10.  Exceptions as enumerated in 42 Pa. C.S. 8552(b)(1)-(9):

The defense of sovereign immunity shall not be raised to claims for damages caused by: (1) operation of any motor vehicle in the possession or control of a Commonwealth party; (2) acts of health care employees of Commonwealth agency medical facilities or institutions; (3) care, custody or control of personal property in the possession or control of Commonwealth parties; (4) dangerous condition of Commonwealth agency real estate and sidewalks; (5) dangerous condition of highways under the jurisdiction of a Commonwealth agency created by potholes or sinkholes or other similar conditions created by natural elements; (6) care, custody or control of animals in the possession or control of a Commonwealth party; (7) sale of liquor at Pennsylvania liquor stores; (8) acts of a member of the Pennsylvania military forces; and (9) administration, manufacture and use of a toxoid or vaccine.

Food Service Supervisor, and these actions could conceivably have encouraged other inmates to confront and possibly assault Plaintiff.  Inciting violence within a penal institution is not within the scope of Defendant Townsend's job.  Defendant Townsend is not immune from any of the State law claims Plaintiff has alleged.

## IV.  Recommendation.

Based on the foregoing, we recommend that the following claims should be dismissed:

(1) all due process claims against the Defendants with respect to Plaintiff's allegations of being required to work on his days off and work without compensation (Doc. 46, p.14, ¶¶ 69-72, 79-80); (2) Plaintiff's Eight Amendment claim that Defendant Townsend's threatening a misconduct was excessive use of force (Doc. 46, p. 14, ¶ 72); (3) Plaintiff's due process and State Law claims against Defendants Sowash and Winkleman (Doc. 46, pp. 14-15, ¶73); (4) Plaintiff's Eighth Amendment claim against Defendant Townsend for staring at Plaintiff (Doc. 46, p. 16, ¶ 77, 82); and (5) Plaintiff's State negligence claims against Defendant Leathers, Tennis, Sowash and Winkleman. (Doc. 46, pp. 16, ¶¶ 73,78 and 81).

We also recommend that the following claims remain: (1) Plaintiff's First Amendment retaliation claim against Defendant Townsend (Doc. 46, pp. 15, ¶¶ 74-75, 83); (2) Plaintiff's Eighth Amendment claims should proceed against Defendant Townsend in relation to inciting harassment from other inmates as against Plaintiff *(Id.)*;  (3) Plaintiff's deliberate indifference claim, with respect to the responses to Plaintiff's grievances concerning retaliation by Defendant Townsend, against Defendants Rackovan, Tennis, Burks and Leathers (Doc. 46, pp. 76, 78, 80-

81); (4) Plaintiff's state law claims against Defendant Townsend (Doc. 75, 82, 83); and (5) all

claims against Defendants Hoover and Dulaney, as the Defendant did not move to have any of

these claims dismissed. (Doc. 31, p. 8, ¶ 54).

Further, we recommend that this case be remanded to the undersigned for further

proceedings.


                                        s/ Thomas M. Blewitt
                                        THOMAS M. BLEWITT
                                        United States Magistrate Judge

Dated:   July 25, 2005

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DAVID JOHNSON,          :        CIVIL ACTION NO. **3:CV-03-2277**

                       :

        Plaintiff       :        (Judge Caputo)

                       :

        v.           :        (Magistrate Judge Blewitt)

                       :

                       :

BENJAMIN TOWNSEND, et al.,    :

                       :

        Defendants    :

## <u>NOTICE</u>

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **July 25, 2005.**

Any party may obtain a review of the Report and Recommendation pursuant to
Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within ten (10)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing

requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


**S/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**


**Dated: July 25, 2005**

23